```
WG:JEG
F.#2005R01928

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

     - against -                            Cr. No. 05-846 (ARR)

RONALD KINGSLEY YOUNG,

          Defendant.

- - - - - - - - - - - - - - - - - -X
```

        GOVERNMENT'S MEMORANDUM OF LAW IN
        OPPOSITION TO DEFENDANT'S MOTION TO
        <u>DISMISS THE INDICTMENT</u>

        ROSLYNN R. MAUSKOPF
        UNITED STATES ATTORNEY
        EASTERN DISTRICT OF NEW YORK

Jonathan E. Green
Assistant U.S. Attorney
    (Of Counsel)

PRELIMINARY STATEMENT

The government submits this memorandum of law in opposition to the defendant's motion to dismiss the indictment. In moving to dismiss, the defendant argues that he was the victim of an illegal search and that his statements were (1) coerced by the threat of violence and (2) elicited by the false promise of immunity. For the reasons set forth herein, the motion is without merit and should be denied.

STATEMENT OF FACTS

On May 6, 1987, the defendant, a Jamaican citizen, was convicted in New York State Supreme Court of Criminal Possession of a Controlled Substance in the Third Degree, a class "B" felony,[1] and sentenced to a term of imprisonment of one to three years. The defendant was deported as an aggravated felon on November 6, 1996.

On October 13, 2005, based on information provided by the defendant's son, U.S. Immigration and Customs Enforcement ("ICE") agents assigned to the Fugitive Task Force went to 90-23 201st Street, Hollis, New York. The defendant answered the door, admitted his identity and acknowledged having previously been deported.

Following his arrest, the defendant was advised of and

---

[1] The defendant has a lengthy arrest record and significant criminal history. For purposes of this motion, only the May 6, 1987 conviction is relevant.

agreed to waive his Miranda rights.  After the waiver, the defendant again admitted his identity and also acknowledged that he had previously been convicted of a felony and deported.  The defendant also admitted that he had illegally returned to the United States, in 1996, via the U.S. Virgin Islands.  Finally, the defendant admitted that (1) he had been selling drugs since his return to the United States; (2) he had no source of income other than narcotics sales; (3) he had never paid any income tax; and (4) his house and three vehicles were purchased with the proceeds of drug sales.

      The defendant consented to a search of his house during which ICE agents recovered a significant amount of narcotics.  ICE Special Agent Thomas Kilbride informed the defendant that while he lacked authority to prevent charges from being filed against the defendant for, among other crimes, illegal re-entry and narcotics laws violations, the agent stated that if the defendant cooperated, Special Agent Kilbride would recommend to the United States Attorney's Office that he be prosecuted only for illegal reentry.  The defendant agreed to cooperate and placed a call to his drug suppliers which led to the arrest of two individuals who were arrested when they arrived at the defendant's house.

<u>ARGUMENT</u>

In a motion dated February 10, 2006, the defendant argues that the ICE Agents made an on-the-spot guarantee of immunity from prosecution if he cooperated.  (Aff. at 6.)[2]  The defendant also alleges that the ICE Agents (1) "entered [his] home without a warrant through a closed door" and (2) "physically hit and abused [him], threatened [his] physical safety, and went through [his] home, searching, and destroying its contents." (Aff. at 5).  The defendant asserts that he signed a consent to search form only "because [he] was afraid of more violence," and because the agents promised, that he "would not be charged with an offense."  (<u>Id</u>.).

Finally, the defendant argues that because his arrest followed (1) the illegal search of his home; (2) the use of coercion to obtain statements; and (3) false promises, his indictment should be dismissed or, at a minimum, his statements suppressed.

The defendant also argues that the indictment is flawed because the single-count indictment charges two crimes.  For the reasons that follow, these arguments are without merit.

---

[2]  "Aff." refers to the "Supporting Affidavit" filed on February 10, 2006.  The Government notes that this "Affidavit" is signed by the defendant and his counsel as a witness.  The "Affidavit" cites 26 different federal cases.  It is unclear how the defendant was able to acquire sufficient legal acumen to swear, under penalty of perjury, to the truth of legal arguments based on federal caselaw.

Point One

The Indictment Correctly Charges A Single Crime

The defendant claims that the indictment is duplicitous in that it charges two crimes in one count and must be dismissed. The defendant is mistaken on the law.

The indictment charges the defendant with being found within the United States after having been deported following a conviction for an aggravated felony. The indictment cites Title 8, United States Code, Sections 1326(a) and 1326(b)(2), and Title 18 United States Code, section 3551 et seq. Section 1326(a) provides, in relevant part:

> any alien who (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Section 1326(b) reads in relevant part:

> (b) Criminal penalties for reentry of certain removed aliens
>
> Notwithstanding subsection (a) of this

5

> section, in the case of any alien described in such subsection . . . (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;

Contrary to the defendant's argument, the government has not charged him with two crimes in a single count. Rather, the government has cited the statute proscribing the substantive crime of which the defendant is accused [8 U.S.C. § 1326(a)] and placed him on notice of the penalty provision to which he is subject [8 U.S.C. § 1326(b)(2)]. Citation to both these sections is necessary to advise the defendant that he is being charged not with illegal reentry, but with illegal reentry after having been removed subsequent to a conviction for an aggravated felony. Where more than one act is charged in a count, the count is not duplicitious if the acts were part of a transaction constituting a single offense. United States v. Lennon, 246 F.2d 24 (2d Cir. 1957) (holding that filing of a false and fraudulent income tax return constitutes a single act within the meaning of the statute proscribing such conduct, that the indictment was not duplicitous by reason of setting forth both understatement of income and fraudulent taking of exemptions as methods by which offense was committed.). Failure to cite these subsections would have provided with defendant with inadequate notice of the charges which he faced. Citation to more than one subsection of a statute in a single count of an indictment is common in federal

criminal pleading and presents no Constitutional infirmity.³  See id.

---

³    Young cites a litany of caselaw which has no relevance whatsoever to the argument presented or any legally cognizable argument which could be presented at this stage of the case.

POINT TWO

<u>There Was No Promise of Immunity On Which The Defendant May Rely</u>

The defendant's affidavit claims that ICE agents illegally entered his home, recovered a significant quantity of narcotics and promised him immunity in exchange for cooperation against his drug suppliers. The government disputes these allegations. However, even assuming the tale to be true, which it is not, the facts still would not warrant dismissal because the ICE Agents lacked the authority to grant immunity.

"[I]t is axiomatic that the United States is not bound by the unauthorized acts of its agents" [<u>Doe v. Civiletti</u>, 635 F.2d 88, 96 (2d Cir. 1980)] and "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." <u>Federal Crop. Ins. Corp. v. Merrill</u>, 322 U.S. 380, 384 (1947); <u>see also id</u>.

The Second Circuit has acknowledged that this "'actual authority doctrine' may produce some harsh results,'" but has nonetheless "been scrupulously followed." <u>Civiletti</u>, 635 F.2d at 96. Similarly, "[t]he First Circuit has held that 'a promise of use immunity made independently by an FBI agent exceeds the scope of his actual authority (and is, therefore, unenforceable).'" <u>United States v. Rudaj</u>, 2005 WL 2508404, *2 (S.D.N.Y. 2005)

8

(quoting United States v. Flemmi, 225 F.3d 78, 84 (1st Cir. 2000)).  "'A defendant who seeks specifically to enforce a promise made by the Government must show both that the promisor had actual authority to make the particular promise and that he (the defendant) detrimentally relied on it.'"  Rudaj, 2005 WL 2508404, *2 (quoting Flemmi, 225 F.3d at 84); see also Roe v. United States Attorney, 618 F.2d 980, 982 (2d Cir. 1980)(per curiam) (denying specific enforcement where "there was no detrimental reliance" on the promise).  Accordingly, the defendant's allegations, even if true, do not provide a basis for dismissal of the indictment.

The defendant cites two inapposite cases in support of his argument that he is entitled to specific performance of the promised immunity agreement.  In United States v. Brody, 808 F.2d 944 (2d Cir. 1986), the defendant claimed that the prosecutor breached the plea agreement by failing to adequately inform the sentencing judge of the extent of his cooperation.  The Second Circuit agreed and stated that "[t]he remedy for a breached plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement."  Brody, 808 F.2d at 947.

Brody is inapposite to the facts here.  In Brody, the government had breached a plea agreement arrived at between the defendant and a government official with actual authority to

9

enter into that agreement.  Here, the ICE Agent who allegedly promised Young immunity had no authority to do so.

In the second case cited by the defendant, <u>United States v. Ecker</u>, 232 F.3d 348 (2d Cir. 2000), the defendant took an interlocutory appeal from a denial of a motion to dismiss for alleged breach of a plea agreement.  The Second Circuit concluded that it lacked jurisdiction to consider such appeals.  Like <u>Brody</u>, <u>Ecker</u> has no applicability here.

POINT THREE

<u>Young's Arrest For Illegal Reentry Was Not The Product of an Illegal Search of His Home</u>

The defendant argues that the indictment should be dismissed because statements concerning his identity, such as pedigree information, were elicited only after there was an allegedly illegal search of his home.  Assuming <u>arguendo</u> the illegality of the search, the remedy is suppression of any evidence obtained, i.e., the drugs, not dismissal of the indictment.  <u>United States v. DiGregorio</u>, 795 F. Supp. 630, 635 (S.D.N.Y. 1992) (appropriate remedy for "outrageous" government misconduct is suppression of evidence obtained, not dismissal of the indictment) (<u>citing</u> <u>United States v. Morrison</u>, 449 U.S. 361 (1981)).

CONCLUSION

For the reasons set forth above, petitioner's motion to dismiss the indictment should be denied.

                                   Respectfully submitted,

                                   ROSLYNN R. MAUSKOPF
                                   United States Attorney

                      By: _____
                                   Jonathan E. Green
                                   Assistant U.S. Attorney
                                   (718) 254-6297

cc:  B. Alan Seidler, Esq.